# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

CHARLES EARL WATSON, III,

  *Plaintiff*,

v.

TANNISCHA MCCALLUM; SEAN DORSEY; CLYDE LEWIS; JAMES ABRIEL; BRANDON WESTBROOK; JOSEPH OBI,

  *Defendants*.

Case No. 4:18-cv-10481

Hon. Matthew F. Leitman
Mag. Anthony P. Patti

_____/

EXCOLO LAW, PLLC
Solomon M. Radner (P73653)
Attorney for Plaintiff
26700 Lahser Road, Suite 401
Southfield, Michigan 48033
(866) 939-2656
sradner@excololaw.com
_____/

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, CHARLES EARL WATSON, III, by and through his attorneys, SOLOMON M. RADNER and EXCOLO LAW, PLLC, and for his Complaint respectfully alleges the following:

## JURISDICTION AND VENUE

1

1. This is a civil action for money damages brought pursuant to 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

2. This Court has original jurisdiction over Plaintiff's claims presented in this Complaint based upon the laws of the United States pursuant to 28 U.S.C. §§ 1331 and 1343.

3. The unlawful actions alleged in this Complaint took place at the Detroit Detention Center, which is within the jurisdiction of the United States Eastern District of Michigan.

4. Venue is appropriate in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) since the Defendants are residents of Eastern Michigan and the acts providing the legal basis for this Complaint occurred in the City of Detroit, County of Wayne, State of Michigan.

## PARTIES

5. Plaintiff, CHARLES EARL WATSON, III, at all pertinent times was a resident of the City of Detroit, the State of Michigan and a citizen of the United States.

6. Defendant, TANNISCHA MCCALLUM ("McCallum"), is employed by the Michigan Department of Corrections as a Sergeant as was acting under the color of law.

7. Defendant, SEAN DORSEY ("Dorsey"), is employed by the Michigan

Department of Corrections as a corrections officer and was acting under the color of law.

8. Defendant, CLYDE LEWIS ("Lewis"), is employed by the Michigan Department of Corrections as a corrections officer and was acting under the color of law.

9. Defendant, JAMES ABRIEL ("Abriel"), is employed by the Michigan Department of Corrections as a corrections officer and was acting under the color of law.

10. Defendant, BRANDON WESTBROOK ("Westbrook"), is employed by the Michigan Department of Corrections as a corrections officer and was acting under the color of law.

11. Defendant, JOSEPH OBI ("Obi"), is employed by the Michigan Department of Corrections as a corrections officer and was acting under the color of law.

12. When discussed together, Defendants McCallum, Dorsey, Lewis, Abriel, Westbrook, and Obi will be referred to jointly as "Defendants".

13. On or about August 26, 2017, at the time of the events alleged in this Complaint, all the Defendants were at all times each acting in their individual capacities, within the course and scope of their employment as corrections officers employed by the Michigan Department of Corrections, and under the color of law.

## FACTUAL BACKGROUND

14. On or about August 26, 2017, Plaintiff was driving on Keeler St. in Detroit when he was pulled over and unexpectedly detained and arrested by Detroit Police Officers William Zeolla and Christopher Bush.

15. Officers Zeolla and Bush then transported Plaintiff to jail at the Detroit Detention Center ("DDC"), a correctional facility operated by the Michigan Department of Corrections.

16. Once at the DDC, Plaintiff was still handcuffed and had his personal belongings, including his shoes, confiscated.

17. Defendant McCallum then attempted to confiscate Plaintiff's eye glasses, which he relies heavily upon, to correct his very poor eyesight.

18. Plaintiff told Defendant McCallum that he could not see without his glasses, and asked if he could keep them, to no avail.

19. Plaintiff then pleaded with Defendant, asking to at least have his shoes back if his glasses were being confiscated, so he could maintain his balance and protect his feet, after losing his vision.

20. Defendant McCallum then grabbed ahold of Plaintiff, who was still handcuffed, and physically shoved Plaintiff as she forcibly removed Plaintiff's glasses.

21. After losing his vision and shoes, Plaintiff lost his balance as Defendant McCallum continued to strong arm Plaintiff.

22. As Plaintiff stumbled with blurred vision, Defendants McCallum and Abriel, unreasonably deployed their electronic control devises a/k/a tasers, and tased Plaintiff twice for at least twenty seconds, sending electric currents throughout his body, causing excruciating pain.

23. Plaintiff, at no time, resisted and/or displayed any threatening behavior toward any of the Defendants or anyone else while he was in police custody.

24. Defendant McCallum and Defendant Abriel exerted unlawfully excessive force as they assaulted a man pleading for his vision.

25. After Defendants McCallum and Abriel, unnecessarily, and unlawfully, incapacitated Plaintiff, Defendants Dorsey and Lewis hog-tied Plaintiff with a chain around his waist, and with his hands and feet both bound in metal cuffs connected to chains which were then attached to the chain around his waist, behind his back.

26. Plaintiff was then yanked upward, off the ground by his chains, facing downward toward the floor, and was carried by Defendants Dorsey and Lewis to a jail cell.

27. Plaintiff was left shackled like a wild animal on the jail cell floor until approximately 2:00 a.m. the next day.

28. Plaintiff was finally permitted to call his girlfriend to come and post bond after being inhumanely bound for several hours.

29. Upon release at around 3:00 a.m., Plaintiff immediately sought treatment at Henry Ford Hospital for muscle spasms he suffered as a result of Defendants' use of excessive force.

30. After leaving the hospital, Plaintiff went to Detroit's 6th precinct to file a formal complaint against the DDC employees who assaulted him.

31. Plaintiff was given a complaint number, #69038, but was told the taser use was undoubtedly justified.

32. While Defendants were brutally tasing Plaintiff, other Defendants were present and had the opportunity to end the excessive use of force, but failed to intervene.

33. Plaintiff did not have any firearms, weapons, or display an object that could have appeared to be a weapon at any time prior to or during the brutal attack.

34. Plaintiff did not threaten Defendants in anyway at any time prior to or during the brutal attack.

35. Plaintiff did not pose an immediate threat of harm to any of the Defendants or any other person in the immediate vicinity at any time prior to or during the brutal attack.

36. Plaintiff did not pose any realistic likelihood of risk of flight at any time prior to or during the brutal attack.

37. At no time relevant, did the Defendants have any probable cause to brutally attack Plaintiff.

38. As a direct and proximate result of the wrongful acts and/or omissions of the Defendants, Plaintiff was harmed and sustained damages.

39. In the records provided by the Michigan Department of Corrections, the documents note that video was taken of the use of excessive force. The records also note that the video was not reviewed by Defendant McCallum's supervisor's when reviewing the incident nor provided to Plaintiff in response to Plaintiff's subpoena requesting such video.

### COUNT I
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983, (FOURTH & FOURTEENTH AMENDMENTS – EXCESSIVE FORCE)

**(Against Defendants McCallum, Abriel, Dorsey, and Lewis)**

40. Plaintiff incorporates herein all the prior allegations.

41. The above-described savage physical attack on Plaintiff was without legal justification.

42. Defendant McCallum and Abriel intentionally, knowingly, maliciously, recklessly, unreasonably, and/or gross negligently tased Plaintiff without a lawful basis.

43. Defendants McCallum and Abriel intentionally, knowingly, maliciously, recklessly, unreasonably, and/or gross negligently tased Plaintiff without a lawful basis.

44. Defendants Dorsey and Lewis intentionally, knowingly, maliciously, recklessly, unreasonably, and/or gross negligently hogtied Plaintiff without a lawful basis and Defendants Dorsey, Lewis, and McCallum forced him to remain in the painful chains for several hours before he was booked and processed and permitted to make a phone call to seek bail.

45. Plaintiff did not commit any acts whatsoever that could make this conduct reasonable or necessary.

46. Tasing Plaintiff and then forcing him to stay hogtied in an extremely uncomfortable position for several hours constituted excessive and unreasonable use of force.

47. At all times relevant, Plaintiff had a clearly established right to liberty protected in the substantive components of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, including his right to personal safety and bodily integrity, as well as protection from unlawful seizure, unnecessary force, unreasonable force, and excessive force pursuant to the Fourth Amendment to the United States Constitution.

48. At all times relevant, as corrections officers acting under color of law, the Defendants were required to obey the laws of the United States, including those laws identified under the Fourth and Fourteenth Amendments of the United States Constitution.

49. In violation of Plaintiff's clearly established constitutionally-protected right to be free from punishment and deprivation of life and liberty without due process of law under the Fourth and Fourteenth Amendments to the United States Constitution, the Defendants employed unnecessary, unreasonable, and excessive force against Plaintiff, thereby inflicting horrendous personal injuries upon him.

50. In violation of Plaintiff's clearly established constitutionally-protected right to be free from punishment and deprivation of life and liberty without due process of law under the Fourth and Fourteenth Amendments to the United States Constitution, the Defendants failed to act to prevent the use of unnecessary, unreasonable, and excessive force against Plaintiff.

51. Pursuant to 42 U.S.C. §§ 1983 and 1988, the Defendants are liable to Plaintiff for all damages allowed under federal law and the Michigan damages statutes. To the extent that the damages allowable and/or recoverable under one or both statutes are deemed insufficient to fully compensate Plaintiff and/or to punish

or deter the Defendants, this Court must order additional damages to be allowed to satisfy any and all such inadequacies.

52. The conduct of Defendants was and remains extreme and outrageous subjecting Defendants to punitive damages.

53. As a direct and proximate result of the Defendants' willful violation of Plaintiff's constitutionally-protected rights, Plaintiff has suffered and will continue to suffer damage into the future, including, but not limited to: physical pain and suffering, mental anguish, severe emotional distress, fright and shock, denial of social pleasures and enjoyment, humiliation or mortification, and all other damages properly recoverable under law.

## COUNT II
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (FOURTH AMENDMENT – FAILURE TO INTERVENE)

**(Against Defendant Dorsey, Lewis, Westbrook, Obi, Abriel)**

54. Plaintiff incorporates herein all the prior allegations.

55. Each Defendant had a duty to intervene when other Defendants were violating Plaintiff's rights under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983, which in effect, resulted in the unlawful stop and seizure and infliction of excessive force upon Plaintiff.

56. Defendants observed and/or had reason to know that excessive force amounting to punishment was being inflicted upon Plaintiff and that Plaintiff

was being unlawfully stopped and seized without a legitimate goal and/or justification.

57. Defendants observed and/or had reason to know that Plaintiff was unlawfully assaulted for pleading for his vision and then excessively handcuffed in a painful hogtied position for several hours.

58. Defendants had the opportunity and means to prevent the brutal tasering and unlawful use of hogtying Plaintiff with chains, and/or violation of the rights of Plaintiff from occurring.

59. Defendants were acting with deliberate indifference to the above described acts being inflicted upon Plaintiff, and as such, were the proximate cause of the injuries suffered by Plaintiff.

60. The foregoing conduct by Defendants itself amounted to a constitutional violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution.

61. As a direct and proximate result of the Defendants' willful violation of Plaintiff's constitutionally-protected rights, Plaintiff has suffered and will continue to suffer damage into the future, including, but not limited to: physical pain and suffering, mental anguish, severe emotional distress, fright and shock, denial of social pleasures and enjoyment, humiliation or mortification, and all other damages properly recoverable under law.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter a judgment in his favor against Defendants and award Plaintiff: compensatory and punitive damages, and reasonable attorney fees, and prays that this Honorable Court:

(A) Award compensatory damages in an amount determined by a jury;

(B) Award punitive damages in an amount determined by a jury;

(C) Award reasonable attorney fees and the costs and disbursements of this action; and

(D) Grant such further relief as this Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38.

Respectfully submitted,

EXCOLO LAW, PLLC

By: */s/ Solomon M. Radner*
SOLOMON M. RADNER (P73653)
Attorney for Plaintiff
26700 Lahser Road, Suite 401
Southfield, Michigan 48033
866.939.2656
sradner@excololaw.com

Dated: January 14, 2020